UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLIAM R. GOODREAU, ) | |
| ) | |
| Plaintiff ) | |
| ) | No. 3:08-0725 |
| v. ) | Judge Echols/Brown |
| ) | **Jury Demand** |
| DR. SARALYN WILLIAMS, ) | |
| ) | |
| Defendant ) | |

### **O R D E R**

**TO: THE HONORABLE ROBERT L. ECHOLS**

### REPORT AND RECOMMENDATION

For the reasons stated below, the Magistrate Judge recommends the motion to dismiss (Docket Entry 9) should be granted and this case be dismissed for lack of subject matter jurisdiction.

### **Background**

The Plaintiff's case began on July 28, 2008, when the Plaintiff, acting *pro se*, filed a complaint consisting of a main document of 17 pages, along with some 538 pages of exhibits 1 through 25. Contrary to the Local Rules, none of the pages are numbered consecutively at the bottom and attempting to find anything in the complaint is, at best, looking for a needle in a haystack. The complaint, at page 1, states that federal jurisdiction is based on gross negligence in the testing for and nontreatment of toxic chemical poisoning (Part C, Medicare Law). As best the Magistrate Judge can understand the complaint, the Plaintiff believes that he was subjected to a number of toxic

chemicals between 1994, through May of 2003, and that he believes that he needs further testing and treatment. It appears that he alleges that he saw the Defendant Dr. Williams during the period of March 23, 2004, to June 21, 2007, and that she either denied him treatment, misdiagnosed various tests, or refused to refer him to other physicians. It appears that the Plaintiff has seen a number of doctors for a number of ailments over the past few years. It appears that the Plaintiff contends that a number of other doctors also failed to test him for various metals which he believed were in his body.

On a page marked "2-H" at the top, and paragraph 3 on the side, Plaintiff alleges that he saw the Defendant Dr. Williams on June 21, 2007, and took with him a large notebook showing records of exposure to toxic chemicals at the Wrigley Charcoal Superfund site, as well as records of several other alleged waste dumping sites. It appears that some of this activity may have begun as early as 1938 and continued through the early 1990's. In another place at a page marked "2-K" Plaintiff alleges that some of the activities took place from 1881 to 1966. He contends that the Defendant, after seeing him, stated in an evaluation that the exposure was not work-related. He states that while he did not work at the plant, he was exposed to the chemicals under working conditions inasmuch as he was developing his own property. He also

2

contends that the Defendant advised him that "Chelation Therapy"[1] has not been found to be beneficial in patients who had previous exposures. It appears that the Plaintiff disagrees and believes that "Chelation Therapy" would be beneficial. He contends that no doctor has tested him correctly for lead and other chemicals. He contends that the doctor's evaluation of him was unethical and below the educational standards she should have. He contends that this is direct violation of the Medicare/Medicaid Act, Part C, Federal Code. He contends that he remains poisoned and continues to suffer grievous and life-threatening symptoms.

The matter was referred to the undersigned for case management and for a report and recommendation as to any dispositive motion (Docket Entry 2).

After completing an initial review of the complaint, the Magistrate Judge entered an order on September 3, 2008 (Docket Entry 4), which pointed out some of the problems with this 555-page complaint and referred the Plaintiff to the Local Rules, specifically pointing out Local Rule 7.03, which provides that pleadings should be filed on 8½" x 11" paper, one-sided, with all exhibits in the pleadings to be paginated progressively, beginning with the first page and continuing through the last page of the document, including exhibits. Plaintiff was also reminded that

---

[1] This therapy, which is used to clear coronary arteries and remove toxic metals, such as lead and mercury from the body, is controversial and not recognized by many mainstream medical authorities as effective. *See* Wikipedia Encyclopedia, Chelaton Therapy. While this encyclopedia is itself controversial, it does provide citation to a number of studies and articles on Chelaton Therapy.

3

Federal Rule of Civil Procedure 8(a) provided that the complaint should contain a short and plain statement of the grounds upon which the Court's jurisdiction depends, a short and plain statement of the claim showing that the pleader is entitled to relief, and demand for judgment for the relief the pleader seeks.

Despite these problems, a plaintiff proceeding *pro se* is entitled to some benefit of the doubt. Plaintiff was reminded that to the extent he was alleging malpractice on the part of Dr. Williams under T.C.A. § 29-26-115(a), that to establish negligence and causation, the Plaintiff must in most cases, be prepared to present a competent expert witness who will testify that the Defendant's conduct was negligent and caused the injuries complained of.

The Magistrate Judge was also concerned that it was not clear that the federal court had jurisdiction in this matter. It did not appear that there was diversity of citizenship between the Plaintiff and Defendant. As far as involving the federal question, the Magistrate Judge noted that the Plaintiff cited Part C of the Medicaid/Medicare law, but did not provide a citation to the particular part of the law which granted the federal court jurisdiction. The Magistrate Judge noted that there might be a difficulty with a one-year statute of limitations as to malpractice claims.

The Magistrate Judge stated that as soon as service of process was obtained on the Defendant, a case management conference

4

would be conducted for the purpose of entering a scheduling order. The Plaintiff was directed to be prepared to discuss the issue of the statute of limitations and federal jurisdiction at that conference.

Subsequently, service of process was obtained on the Defendant and the Defendant filed a motion for extension of time to file a responsive pleading (Docket Entry 5). This motion was granted and a case management conference was set for February 9, 2009, at 1:30 p.m., before the undersigned. That order provided that the Plaintiff should file with the Court by January 16, 2009, a three-page summary of his case, stating (1) the specific basis for jurisdiction, and (2) his theory of the case which allowed him to have a recovery (Docket Entry 6). This order was sent by certified mail and it was signed by the Plaintiff on December 30, 2008 (Docket Entry 7). The Defendant in this matter responded to the complaint by filing a motion to dismiss on January 30, 2009 (Docket Entry 9). The motion was accompanied by a memorandum of law (Docket Entry 10).

The grounds advanced for dismissal under Rule 12(b)(6) and 12(b)(1) were as follows:

1. The Plaintiff's complaint failed to clearly allege any claims against the Defendant, or alleged material elements of any of the potential claims the Plaintiff was attempting to assert.

5

2. That despite being ordered by the Court to clarify his claims with a three-page summary, the Plaintiff had failed to comply with the order, leaving the Defendant to guess as to the claims the Plaintiff was attempting to assert against her.

3. That even reading the Plaintiff's complaint under the most favorable light, that the Plaintiff had failed to meet the requirements that the complaint contained either direct or inferential allegations respecting the elements of the potential claims.

4. That the complaint should be dismissed in its entirely for failing to state a claim upon which relief may be granted.

5. That the Plaintiff could not show the complaint is subject to diversity jurisdiction as both Plaintiff and the Defendant are residents of Tennessee.

6. That the Plaintiff cannot show that his complaint is subject to a federal question. The Federal Medicare/Medicaid Act does not give the federal court jurisdiction.

7. That he has failed to assert any claim for which there is federal jurisdiction and the complaint must be dismissed in its entirety.

The case management conference was held at 1:30 p.m. on February 9, 2009. The Plaintiff did not appear at the case management conference, and the Court has received no communications from the Plaintiff since the filing of the original complaint in

6

July, 2008. Counsel for the Defendant advised that she has had no contact with the Plaintiff, although she had sent him a copy of the draft of the proposed case management order.

The Magistrate Judge pointed out that there was a motion to dismiss and the Plaintiff was given until February 17, 2009, to file a response. The Plaintiff was specifically warned that failure to respond to the motion to dismiss can be taken by the Court as meaning that he has no opposition to the motion to dismiss and that the Plaintiff had missed a January 16, 2009, deadline to provide the Court and the Defendant with a three-page summary of his case. The Magistrate Judge pointed out that Plaintiff had failed to obey a Court order to provide the summary, and had failed to attend the initial case management conference. He was warned that regardless of the merits of his case, it could be dismissed for failing to prosecute and failing to obey Court orders (docket Entry 13). A copy of this order was sent to the Plaintiff by both regular and certified mail. As of the date of the entry of this report and recommendation, nothing further has been heard from the Plaintiff.

### Legal Discussion

The Plaintiff in this matter failed to respond to the Court order to provide a three-page summary of his case, he failed to attend the initial case management conference, and he has now failed to respond to the motion to dismiss. The Plaintiff was clearly warned of the consequences of failing to respond to

7

pleadings and Court orders in this matter. The court may now find the Plaintiff does not oppose this motion to dismiss. If the Plaintiff was having difficulty in attending or responding, he could have easily filed a motion for additional time. Instead, the Plaintiff appears to have taken no action whatever. As the Supreme Court pointed out in *Pioneer Investment Services Company v. Brunswick Associates, Limited*, 507 U.S. 380 (1993), the factors to be considered are (1) prejudice to opposing party, (2) the length of any delay and the impact on proceedings, (3) the reason for the delay, (4) whether the delay was in the control of a party, and (5) whether the party was acting in good faith. The Sixth Circuit, in a very recent case, *Howard v. Nationwide Property and Casualty Insurance Company*, 2009 WL 50157, reiterated the five-factor test set forth by the Supreme Court in the *Pioneer* case. In this case, there has been no indication whatever of why the Plaintiff had failed to attend the case management conference, filing a summary of his case, or responding to the motion to dismiss.

Nevertheless, recognizing that the Plaintiff is *pro se* the Magistrate Judge has also reviewed the merits of the motion to dismiss. As an initial matter, it appears that there is no diversity of citizenship in this matter since the pleadings establish that the Plaintiff and Defendant are both residents of Tennessee. As the Defendant points out, only on the last two pages of the complaint does the Plaintiff make any real reference to

actions by the Defendant. The Plaintiff contends that the Defendant "did not chelate" and goes on to say:

> This is _Unethical_, below the _Education_ the Defendant gained to achieve _Degrees_ in her _Specialty_, a blatant disregard of the information presented, (Environmental samples and source of Exposure; Reid Records) and No Testing of the other 6 groups, both _Carcinogenic_ and _accumulative_ chemicals; Plaintiff has _expired all efforts_ at gaining Testing/Treatment at Vanderbilt Medical Center, who advertizes these services, is medicare and Healthspring certified to do so, and is in direct violation of the Medicare/Medicaid Act, Part C, Federal Code.
>
> The _good news_ this Dr. professes in her 7/23/07 letter to the Plaintiff, Mr. Goodreau, is a _piece-meal_ job, with Background Samples used as a Clinical diagnosis, and according to the Reid Files, another misdiagnosis.. Surely, another opinion is warranted.

(Emphasis in original).

There is no indication as to how Defendant violated the Medicare Act or what her negligence was. It is difficult to read into the complaint how Dr. Williams' treatment caused the Plaintiff's injuries, which according to the complaint, existed prior to seeing Dr. Williams. Certainly, it is difficult to understand from this how the Plaintiff is asserting (1) that the medical care and treatment that Defendant provided to him fell below the recognized standard of accepted professional practice at the time, (2) that Defendant acted with less than ordinary and reasonable care in providing treatment, and (3) Defendant's negligence or omissions caused him injury that would not otherwise have occurred. T.C.A. § 29-26-115.

9

Regardless of the merits of his claims, for the Court to have subject matter jurisdiction, the Plaintiff has the burden of proving jurisdiction in order to survive a motion to dismiss for lack of subject matter jurisdiction. As pointed out above, there is no claim of diversity jurisdiction. Under 28 U.S.C. § 1331, jurisdiction will exist if the case arises under federal law, and this must be apparent on the face of the Plaintiff's complaint.

The only federal jurisdiction asserted by the Plaintiff is the Federal Medicare Act. It has been held, however, that the Federal Medicare Act provides for an administrative hearing before the Secretary of the Department of Health and Human Services, and only after that hearing does the Act provide for a judicial review of the Secretary's determination in the form of a civil action in Federal District Court against the Secretary. *See Dow v. Healthspring of Alabama, Inc.*, 541 F.3d 1044, 1047-1048; *Cochran v. U.S. Healthcare Financing Administration*, 291 F.3d 775 (11th Cir. 2002). As these cases point out, a plaintiff must exhaust administrative remedies by going through the agency appeal process before the federal court has jurisdiction (42 U.S.C. § 1395(ii), 42 U.S.C. § 1395 (ff)(b)(1)).

Absent some showing by the Plaintiff of a specific grant of authority to the federal court in this matter, the Magistrate Judge can only conclude that the federal court lacks subject matter jurisdiction in this case.

10

While the Magistrate Judge believes the case could be dismissed for failure to prosecute and obey Court's orders as discussed above, a lack of federal jurisdiction makes such a recommendation unnecessary.

**Recommendation**

For the reasons stated above, the Magistrate Judge recommends that this case be dismissed for lack of subject matter jurisdiction.

Under Rule 72(b) of the Federal rules of civil Procedure, any party has 10 days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation, with the District Court. Any party opposing said objections shall have 10 days from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within 10 days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 106 S. Ct. 466, 88 L.Ed.2d 435 (1985), *Reh'g denied*, 474 U.S. 1111 (1986).

**ENTERED** this 26th day of February, 2009.

/s/ Joe B. Brown  
JOE B. BROWN  
United States Magistrate Judge